UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
LA TRICIA HARDY,               )
                               )
            Plaintiff,         )
                               )
      v.                       )   Civil Action No. 13-0362 (ABJ)
                               )
NORTHERN LEASING SYSTEMS, INC.,)
                               )
            Defendant.         )
_____)
```

**MEMORANDUM OPINION**

This matter is before the Court on the motion to dismiss the plaintiff's amended complaint filed on behalf of Northern Leasing Systems, Inc. [ECF No. 11]. For the reasons discussed below, the motion will be granted.

I.  BACKGROUND

This action arises from efforts by Northern Leasing Systems, Inc. ("NLS") to enforce an equipment finance lease, personally guaranteed by the plaintiff, for the rental of equipment for processing non-cash payments at the plaintiff's business, Capitol Hill Beauty LLC. *See* Am. Compl. ¶¶ 12–14; Mem. of P. & A. in Support of Def.'s Mot. to Dismiss for Failure to State a Claim ("Def.'s Mem."); *id.*, Ex. 1 (New York Civil Court Summons and Verified Complaint and Non Cancelable Equipment Finance Lease Agreement ("Lease Agreement")) at 5–10 (page numbers designated by ECF).

1

NLS is a "corporation located in the state of New York" which "finances the equipment needs of . . . business[es] . . . ." Def.'s Mem. at 1. NLS represents that it "has no ties to the District of Columbia," that it "does not have an office in the District of Columbia, and that it does not "solicit or engage in persistent conduct aimed at deriving revenue from good or services from the District of Columbia." *Id.* at 3.

The plaintiff entered into the Lease Agreement with NLS on October 14, 2010. *See* Def.'s Mem. at 1; Mem. of P. & A. in Support of Denying Def.'s Mot. to Dismiss for Failure to State a Claim ("Pl.'s Opp'n") at 3. She thereby agreed to "individually, absolutely and unconditionally guarant[ee] to [NLS] prompt payment when due" of all obligations under the lease. Lease Agreement at 2. The plaintiff "abid[ed] by her contract for over two years," Am. Compl. ¶ 12, at which time she "stopped the automatic payment deductions from her bank account," *id.* ¶ 14, and "requested that said contract be cancelled due to inequities within said contract."[1] *Id.* ¶ 12. When the plaintiff defaulted on her payment obligations, NLS "filed a lawsuit against the [her] . . . in New York State Court[.]" Def.'s Mem. at 1; *see id.*, Ex. 1 (Verified Complaint). "[A] judgment was entered in favor of [NLS]." Def.'s Mem. at 1; Pl.'s Opp'n, Ex. B (Civil Judgment entered on October 26, 2012).

The plaintiff alleges that NLS "placed negative information on [her] credit reports with all three (3) Credit Bureaus," Am. Compl. ¶ 15, and "placed two (2) inquiries on [p]laintiff's credit reports to reflect her account as being a charge off for non-payment," *id.* ¶ 21. These actions allegedly "brought her credit down drastically." *Id.* Due to what the plaintiff describes

---

[1] According to the plaintiff, "due to [her] business being cash only . . . she had made numerous requests . . . to cancel the[] contract." Pl.'s Opp'n at 4. She further asserted that the serial numbers of the equipment she received were different from the serial numbers on the Lease Agreement. *See id.*

as "erroneous placements on [her] credit reports," she further alleges that "she has been unable to secure any type of loan," causing her "undue hardship." *Id.* ¶ 22.

According to the plaintiff, NLS violated the Fair Credit Reporting Act ("FCRA"), *see* 15 U.S.C. § 1681, the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692, certain District of Columbia criminal statutes, *see* D.C. Code §§ 22-3401 to -3403, the D.C. Consumer Protections Act ("Consumer Act"), *see* D.C. Code § 28-3814, and the D.C. Consumer Protection Procedures Act ("CPPA"), *see* D.C. Code § 28-3904. *See generally* Am. Compl. ¶¶ 23–28 (Counts I–IV). She demands a declaratory judgment and monetary damages. *See id.* at 5 (page number designated by ECF).

## II. DISCUSSION

### A. Subject Matter Jurisdiction

The Court recognizes its ongoing obligation to ensure that "it is acting within the scope of its jurisdictional authority," *Ha v. U.S. Dep't of Educ.*, 608 F. Supp. 2d 45, 46 (D.D.C. 2010) (internal citations omitted), and begins its discussion with NLS's motion to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that the Court lacks subject matter jurisdiction over the plaintiff's FDCPA and Consumer Act claims. According to NLS, neither statute applies, and therefore, "the Court lacks power to hear [these claims]." Def.'s Mem. at 4. The plaintiff responds that the Court has jurisdiction because "liability and damages are founded on [f]ederal question jurisdiction." Pl.'s Opp'n at 5. The Court concurs.

It is apparent that the plaintiff's causes of action arise in part under two federal statutes -- the FDCPA and the FCRA -- and these are matters over which this Court has subject matter jurisdiction. Whether the statutes are applicable is a different question which the Court will

address in the context of NLS's motion under Rule 12(b)(6) to dismiss the complaint for failure to state claims upon which relief can be granted.

### B. Personal Jurisdiction

NLS moves to dismiss the plaintiff's amended complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that this Court lacks personal jurisdiction over it. *See* Def.'s Mem. at 2. Because "the [p]laintiff has failed to make a *prima facie* showing of personal jurisdiction over [NLS]," it argues that "the suit must be dismissed." *Id*. at 4. The plaintiff counters that NLS falls within the scope of the District of Columbia's long-arm statute because the equipment "was that of [NLS], it was set-up on behalf of [NLS] and any payment made regarding this lease was made to [NLS]. . . . [T]his is evidence of them doing business within the District of Columbia." Pl.'s Opp'n at 6.

The plaintiff bears the "burden of establishing personal jurisdiction over each defendant." *Thompson Hine LLP v. Smoking Everywhere, Inc.,* 840 F. Supp. 2d 138, 141 (D.D.C. 2012) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 455-56 (D.C. Cir. 1990). She cannot rely on bare allegations or conclusory statements, but "must allege specific acts connecting [the] defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation omitted). The plaintiff's *pro se* status does not relieve her of her obligation to "plead an adequate jurisdictional basis for [her] claims." *Donnelly v. Sebelius*, 851 F. Supp. 2d 109, 116 (D.D.C. 2012) (internal citation omitted).

The Court determines whether personal jurisdiction may be exercised "by reference to District of Columbia law." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). "A District of Columbia court may exercise personal jurisdiction over a person domiciled in . . . or maintaining . . . its principal place of business in, the District of Columbia as to any claim for

relief." D.C. Code § 13-422. Nowhere in the complaint does the plaintiff allege that NLS either is domiciled in or maintains its principal place of business in the District of Columbia.

The Court next engages in a two-part inquiry to determine whether a non-resident defendant is subject to personal jurisdiction in the District of Columbia. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). The Court "first examine[s] whether jurisdiction is applicable under the [District of Columbia's] long-arm statute and then determine[s] whether a finding of jurisdiction satisfies the constitutional requirements of due process." *Id.* (citing *Ferrara*, 54 F.3d at 828). To this end, the plaintiff may show that NLS has "minimum contacts" with this forum, such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). These minimum contacts must arise from "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the [District of Columbia], thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In other words, "the defendant's conduct and connection with the [District of Columbia] are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In relevant part, the long-arm statute allows a court in the District of Columbia to exercise personal jurisdiction over a non-resident defendant with regard to a claim arising from the defendant's conduct in:

      (1)    transacting business in the District of Columbia;
      (2)    contracting to supply services in the District of Columbia;
      (3)    causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
      (4)    causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly

> does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a).[2] Although the plaintiff alleges that "the conduct complained of occurred here," Am. Compl. ¶ 7, she does not indicate which provision of the long-arm statute applies in this case. Her opposition to the defendant's motion, however, suggests that she relies on the "transacting business" provision. She "contends that due to the fact that no one other than [NLS] provided the equipment, installed it or received payment, that this is evidence of [NLS] doing business within the District of Columbia. Pl.'s Opp'n at 6.

Section 13-423(a)(1) is "interpreted to be coextensive with the Constitution's due process limit." *First Chicago Int'l v. United Exch. Co.*, 836 F. 2d 1375, 1377 (D.C. Cir. 1988) (internal citations omitted). "To establish personal jurisdiction under the 'transacting business' clause of the long-arm statute . . . a plaintiff must demonstrate that (1) the defendant transacted business in the District; (2) the claim arose from the business transacted in the District . . . ; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair, play and substantial justice.'" *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 521 (D.D.C. 1995) (quoting *Int'l Shoe*, 326 U.S. at 316).

In the face of NLS's arguments that it neither engages in persistent conduct aimed at deriving revenue from goods or services from the District of Columbia or transacts any business here, *see* Def.'s Mem. at 3, the plaintiff gives no indication that NLS has the requisite contacts, ties, or relation to the District of Columbia. Missing from the amended complaint are any factual allegations to show that NLS "'purposefully directed' any activities at residents of the District of

---

[2]   The alternative bases set forth under the long-arm statute are inapplicable.

Columbia . . . [or] that it has any 'contacts, ties, or relation' to the District of Columbia." *Buesgens v. Brown*, 567 F. Supp. 2d 26, 36 (D.D.C. 2008) (quoting *Burger King*, 471 U.S. at 472).

If the plaintiff were to rely on D.C. Code § 13-423(a)(2) as a basis for asserting personal jurisdiction, she still cannot prevail. "[T]he mere existence of a contract between a non-resident and a resident is not sufficient basis on which to claim jurisdiction over the non-resident in the District of Columbia." *COMSAT*, 900 F. Supp. at 524 (citing *Hanson v. Denckla*, 357 U.S. 235 (1958)); *Willis v. Willis*, 655 F.2d 1333, 1338 (D.C. Cir. 1981). The Lease Agreement is a particularly weak justification for invoking the D.C. long-arm statute. By its terms, New York law governs, and any litigation shall be brought in the federal or state courts in New York. *See* Lease Agreement at 5.[3]

If the Court were to consider NLS's alleged threats to sue the plaintiff, *see id.* ¶ 19, telephone calls to her workplace, *id.* ¶ 20, and the "undue hardship" she allegedly suffers, *id.* ¶ 22, as tortious injury suffered in the District of Columbia caused by NLS's actions outside of the District of Columbia, the plaintiff cannot rely on section 13-426(a)(4) either. The plaintiff fails to establish "any of subsection (a)(4)'s so-called 'plus factors': "regularly do[ing] or solicit[ing] business, engag[ing] in any other persistent course of conduct, or deriv[ing] substantial revenue

---

[3] Paragraph 20 of the Lease Agreement provides:

> THIS LEASE SHALL BE GOVERNED BY THE LAWS FO THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICT OF LAW, RULES OR PRINCIPLES THEREOF. ALL ACTIONS, PROCEEDINGS OR LITIGATION BROUGHT BY [NLS OR THE GUARANTOR] ARISING FROM OR IN ANY WAY RELATED TO THIS LEASE SHALL BE INSTITUTED AND PROSECUTED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS LOCATED IN THE STATE AND COUNTY OF NEW YORK NOTWITHSTANDING THAT OTHER COURTS MAY HAVE JURISDICTION OVER THE PARTIES AND THE SUBJECT MATTER.

Lease Agreement at 5 (emphasis in original).

from goods used or consumed, or services rendered, in the District of Columbia." *McIntosh v. Gilley*, 753 F. Supp. 2d 46, 59 (D.D.C. 2010) (quoting D.C. Code § 13-423(a)(4)).

NLS is neither subject to the District's long-arm statute nor maintains sufficient contacts with the District so as to render it subject to this Court's jurisdiction.[4]  Its motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction will be granted.

### C.  Failure to State Claims Upon Which Relief Can Be Granted

NLS moves to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the pleading fails to state claims under the FCRA, the FDCPA, and the Consumer Act upon which relief can be granted.  *See* Def.'s Mem. at 6-9.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, it must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Patton Boggs LLP v. Chevron Corp.,* 683 F.3d 397, 403 (D.C. Cir. 2012) (internal quotation omitted).  Although a complaint filed by a pro se plaintiff is "to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94

---

[4]   It does not appear that D.C. Code § 13-423(a)(3) applies in this case, as the amended complaint does not allege that NLS caused tortious injury by an action originating in the District of Columbia.  Nor can the plaintiff rely on 15 U.S.C. § 1692k(d), *see* Pl.'s Opp'n at 5, as a basis for establishing personal jurisdiction. Section 1692k(d) does not confer jurisdiction and instead establishes the limitations period within which to bring an action under the FDCPA "in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction . . . ."  15 U.S.C. § 1692k(d).  Lastly, the plaintiff cannot rely on Rule 4 of the Federal Rules of Civil Procedure as support for the proposition that "serving a summons . . . establishes personal jurisdiction."  Pl's Mot. to Amend ¶ 3.  Rather, under Rule 4(k), "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is *subject to the jurisdiction of a court of general jurisdiction* in the state where the district court is located."  *Id.* (emphasis added).  Service on a non-resident defendant by mail to a New York address might establish personal jurisdiction only if NLS otherwise were subject to this Court's jurisdiction.

(2007), it, too, must set forth factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### 1. Fair Credit Reporting Act

NLS moves to dismiss the plaintiff's claims under the FCRA on the ground that the complaint "has not alleged any facts which would make the FCRA applicable to this action . . . ." Def.'s Mem. at 7. "Congress enacted FCRA to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (internal citations omitted). In order to show a violation of the FCRA, the plaintiff must allege that NLS is a "consumer reporting agency,"[5] or that it creates "consumer report[s],"[6] or that it "regularly engages in . . . assembling or evaluating consumer credit information, or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). Although information originating from NLS may have been reported to the credit bureaus, *see* Am. Compl. ¶ 24, the amended complaint fails to make any factual allegations showing that NLS is a consumer reporting agency, or that it creates consumer reports, or that it otherwise engages in conduct within the scope of the FCRA. Her claim under the FCRA therefore will be dismissed.

---

[5] "The term 'consumer reporting agency' means any person which . . . regularly engages in whole or in part in the practice of *assembling or evaluating consumer credit information* or other information on consumers *for the purpose of furnishing consumer reports to third parties* . . . ." 15 U.S.C. § 1681a(f) (emphasis added).

[6] "The term 'consumer report' means any written, oral, or other communication of any information *by a consumer reporting agency* bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) *credit or insurance to be used primarily for personal, family, or household purposes*; (B) employment purposes; or (C) any other purpose authorized under section [1681b]." 15 U.S.C. § 1681a(d) (emphasis added).

2. Fair Debt Collection Practices Act

NLS also moves to dismiss the plaintiff's claim under the FDCPA which, it alleges, "do[es] not apply to the facts of this case." Def.'s Mem. at 8. NLS asserts that it is not a "debt collector" and the plaintiff's debt is not a "debt" as these terms are defined in the FDCPA. *See id.* at 7-8.

"The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices," and it "authorizes any aggrieved person to recover damages from any debt collector who fails to comply with any provision of the FDCPA." *Marx v. General Revenue Corp.*, __ U.S. __, __, 133 S. Ct. 1166, 1171 n.1 (2013) (internal quotation marks and citations omitted). A "debt collector" is any person in any business "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Excluded from the FDCPA's coverage is activity that "concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." 15 U.S.C. § 1692a(6)(F)(iv). Rather, the FDCPA concerns debt collection practices for "consumer debt[s]" that are primarily for "personal, family, or household purposes." 15 U.S.C. § 1692a(5).

The plaintiff's allegations regarding NLS's debt collection activities are vague at best. For example, she contends that "many of these practices are widespread for the Defendants," Am. Compl. ¶ 3, yet she does not articulate or describe these practices. And even if NLS failed to respond to her "numerous requests of reporting of unsubstantiated credit inaccuracies . . . to all three . . . Credit Bureaus," *id.* ¶ 4; *see id.* ¶¶ 17-20, none of these allegations indicate that NLS is a debt collector for purposes of the FDCPA. The Lease Agreement pertains to financing for non-cash payment processing equipment for the plaintiff's business, such that the underlying

debt not is a "consumer debt" for purposes of the FDCPA, notwithstanding the plaintiff's unsupported assertion that "said equipment, if used, was for personal use only." *Id.* ¶ 2. "[T]he burden rests on [the plaintiff], at this stage, to allege facts sufficient to support [her] claim[s]" under the FDCPA, *Winstead v. EMC Mortgage Corp.*, 697 F. Supp. 2d 1, 4 (D.D.C. 2010) (internal citations omitted), and she fails to establish that the underlying debt was a consumer debt primarily for personal, family, or household purposes.

### 3. The Consumer Act and the Consumer Protection Procedures Act

NLS argues that "the underlying obligation . . . is a Commercial lease in which the [p]laintiff acted as guarantor," such that the District's Consumer Act does not apply. Def.'s Mem. at 8. Had NLS acknowledged the plaintiff's claim under the CPPA, presumably it would have moved to dismiss it, too.

"[T]he [Consumer Act is] designed to police trade practices arising only out of consumer-merchant relationships . . . , and [it] does not apply to commercial dealings outside the consumer sphere." *Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C. 2006) (internal quotation marks and citations omitted). It is limited to addressing "conduct and practices in connection with collection of obligations arising from consumer credit sales, consumer leases, and direct installment loans." D.C. Code § 28-3814; *see id.* § 28-3802 (defining "consumer credit sale" as the "sale of goods or services in which . . . (C) the goods or services are purchased primarily for a personal, family, household, or agricultural purpose . . . ."). The Consumer Act "does not protect merchants in their commercial dealings with suppliers or other merchants." *Ford*, 908 A.2d at 83 (internal citation omitted).

Similarly, "[t]he purpose of the CPPA is to protect consumers from a broad spectrum of unscrupulous practices by merchants," and "[d]espite its broad reach the CPPA applies only to

consumer-merchant relationships." *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 279 (D.D.C. 2011) (internal quotation marks and citations omitted). For purposes of the CPPA, a "consumer" is "a person who does or would purchase, lease (from), or receive consumer goods or services." D.C. Code § 28-3901(a)(2). The term "consumer" used as an adjective "describes anything, "without exception, which is primarily for personal, household, or family use." *Id.*

According to the plaintiff, "the equipment that is at the core of this Complaint[] was delivered to a place of business," yet "if used, was for personal use only." Am. Compl. ¶ 2. Notwithstanding this assertion, the amended complaint contains no factual allegations to indicate that the underlying equipment finance lease was primarily for personal, household, or family use. The pleading neither describes the equipment, nor explains its function, nor offers an alternative interpretation of the Lease Agreement, the plain language of which establishes the commercial nature of the transaction. The plaintiff fails to state claims under the Consumer Act and the CPPA upon which relief can be granted, and both claims will be dismissed.

4.  Criminal Statutes

Although NLS fails to address them, the amended complaint also includes allegations that NLS violated certain criminal laws of the District of Columbia. *See* Am. Compl. ¶ 27 (Count III). The sections at issue, *see* D.C. Code §§ 22-3401 to –3403, pertain to persons engaged in the business of debt collection and prohibit such persons from using the words "'District of Columbia,' 'District.' the initials 'D.C.', or any emblem or insignia utilizing any of the said terms as part of its design, in such manner as reasonably to convey the impression or belief that such business is a department, agency, bureau, or instrumentality of the municipal government of the District of Columbia . . . ." D.C. Code § 22-3401. A penalty for such an offense is "a fine of not more than $300 or by imprisonment for not more than 90 days, or by

both." D.C. Code § 22-3402. Assuming without deciding that the plaintiff may bring a civil suit under these provisions, her claim necessarily fails because the amended complaint sets forth no factual allegations that NLS has taken any action to create the erroneous impression that it is an agency or instrumentality of the District government.

### D.  Attorney's Fees and Costs

Finally, NLS "move[s] the Court to award . . . costs and attorney's fees," Def.'s Mem. at 10, under the FDCPA which in relevant part provides that, "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees . . . ." 15 U.S.C. 1692k(a)(3). According to NLS, the plaintiff filed this action "in retaliation of the proper New York claim," and thus has acted in "bad faith . . . or for the purpose[] of harassing" the defendant. Def.'s Mem. at 10.

The plaintiff not only strains the Court's limited resources, but also forces NLS to incur expenses in responding to the complaint. But where "the plaintiff is a *pro se* litigant . . . , courts should afford greater leniency and rarely award attorney's fees." *Scott-Blanton v. Universal City Studio Prods. LLP*, 593 F. Supp. 2d 171, 175 (D.D.C. 2009) (citing *Hughes v. Rowe*, 449 U.S. 5, 15 (1980)). Generally, "[a]n unrepresented litigant should not be punished for [her] failure to recognize subtle factual or legal deficiencies in [her] claims." *Hughes*, 449 U.S. at 15.  It is far more likely that the plaintiff misconstrues the law, and the filing of a lawsuit by a person with limited knowledge of the law is not an act of bad faith.  The Court will deny NLS's motion for attorney's fees and costs.

### III. CONCLUSION

The Court concludes that it lacks personal jurisdiction over the NLS in this matter and that the amended complaint fails to state claims under the Fair Credit Reporting Act, the Fair

Debt Collection Practices Act, the D.C. Consumer Act and Consumer Protection Procedures Act, and the D.C. Criminal Code upon which relief can be granted.  Accordingly, NLS's motion to dismiss will be granted.  Its motion for an award of attorney's fees and costs will be denied.  An Order accompanies this Memorandum Opinion.

/s/
AMY BERMAN JACKSON
United States District Judge

DATE:  July 12, 2013